THOMAS HUTCHENS v. NATIONAL FIREWORKS DISTRIBUT-
ING CO., ETC.

Western Section.   May 11, 1928.

Petition for Certiorari denied by Supreme Court, June 30, 1928.

H. S. Buchanan and W. G. Cavett, of Memphis, for plaintiff in
error.

G. T. and Millsaps Fitzhugh, of Memphis, for defendant in error.

HEISKELL, J.   The declaration in this case is as follows:
"The plaintiff, Thomas Hutchens, a minor about twelve years
of age and who resides with his parents on Holmes avenue,
sues the defendant, the National Fireworks Distributing Co.,
and the United States Fireworks, Inc., for the sum of two

thousand ($2,000) dollars for compensatory and punitive damages and for cause of action says:

"That the defendant, National Fireworks Distributing Company, and United States Fireworks Company, Inc., which is located on Vandalia street in Shelby county, Tennessee, owned and operated a factory by which it manufactured and sold fireworks and highly explosive articles; that the defendants removed from its place of business, certain highly explosive articles together with other unsalable things and negligently dumped said things on the side of the public road and thoroughfare, known as Holmes avenue and this dumpage constituted an attractive nuisance to children, and the said Thomas Hutchens being a minor, not knowing or appreciating that any of said dumpage was dangerous or explosive, picked up some of said dumpage, which proved to be highly explosive and which did explode, which was highly dangerous and which was known by the defendant to be dangerous or which should have been known to have been dangerous when left or dumped on the public highway and thoroughfare and which was known by said defendants to be used and frequented by children, and said highly explosive articles exploded and severely and seriously burned plaintiff's face and eyes and seriously and permanently injured him.

"Plaintiff avers that he did not know, nor appreciate that said articles left there by defendants on the public highway were explosive or dangerous; that the defendant well knew or by the exercise of due care, caution and foresight could and should have known said articles were highly explosive and dangerous, and especially was this true, because the defendant had manufactured same and had removed same from its premises and dumped them on the highway and the said defendant's negligent and reckless conduct in these regards was the true and proximate cause of the injuries to the plaintiff.

"Plaintiff avers that the negligent and reckless acts of the said defendant in removing said highly and dangerous explosives from its place of business and leaving same upon the public highway, was an attractive nuisance to children and those of immature ages, and especially was this true as to the plaintiff, who is a minor of tender years and it was the said negligent and reckless acts of the defendant that caused the said injuries to the plaintiff."

The defendant pleaded not guilty and contributory negligence of the plaintiff. The court below gave a peremptory instruction in favor of defendant and plaintiff has appealed.

The uncontroverted facts of the case are as follows: The plaintiff, twelve years and eight months of age, with a companion discovered the dumpage of defendant which was being burned; they noticed some explosions from the burning of the debris. They picked up several firecrackers and took them to the house of plaintiff's father about a mile and a half distant, here they extracted the powder from the firecrackers, putting that from one cracker in one pile and the powder from the others in another pile some distance from the first pile. They then touched a match to the smaller pile, which flashed without damage, but some spark or fire from this pile fell in the larger pile causing it to flash or explode, burning and injuring the plaintiff. The proof shows that plaintiff was an intelligent boy for his age. He was in the 7-2 grade at school; knew that powder would explode when ignited and had the usual knowledge of a boy of his age in regard to fireworks. The question presented by the assignments of error is whether or not the case should have gone to the jury.

It will be noted from the declaration that the plaintiff's suit is based upon the doctrine of attractive nuisance. Yet it is evident at a glance that the plaintiff would have incurred the same danger if he had purchased these firecrackers or they had been given to him. If therefore, it would not be negligence to sell firecrackers or gunpowder to a thirteen-year-old boy, or to give them to him, it would seem that the attractive nuisance doctrine can have no application. It might be gross negligence to give firecrackers to a five-year-old child, but not to a boy of thirteen of average intelligence. We think no case can be found where this doctrine has been applied to anything found by a child where it would not be negligence to sell or give the same thing to the same child. This test cannot be applied in most attractive nuisance cases, but where susceptible of application, we think it will be seen to be sound. It might well be held to be negligence to sell or give to a boy like the plaintiff even, a bomb, or a dynamite cap, something of unusual danger, with which the boy is not acquainted, but we cannot think this could be so as to ordinary firecrackers in the case of a boy of the age and intelligence of the plaintiff in this case.

There is abundant authority to sustain the contention of the defendants that there is no liability in this case and that the directed verdict for defendant was proper.

A directed verdict for the defendant was sustained in Stephens v. Blackwood Lumber Co. (N. C.), 131 S. E., 315. The court said:

"From this evidence the jury would have been justified in finding that defendants had stored blasting powder, to be used in the construction of logging roads, in the old mill-house; that the door to this mill was not locked or securely

fastened on the afternoon when plaintiff's intestate went there; that he entered the millhouse and procured there some of the powder which defendants had stored therein, and that this was the powder by the explosion of which he was fatally injured when he ignited the envelope with a match while returning from the church three miles distant from the mill. There was evidence also that children, including plaintiff's intestate, were in the habit of going to the mill to play about the premises and in the old millhouse; that plaintiff's intestate was about fourteen years of age, and smaller in size than most boys of that age; that he knew that the powder which he got at the mill would, when brought in contact with fire, explode. There was no evidence, however, as alleged in the complaint, that the powder in the mill was in cans which were open and exposed, or that plaintiff's intestate went to the mill on the afternoon of August 18, 1921, to play. He went alone, and remained there only a short time.

"The court was of opinion that, upon all the evidence, the jury would not be justified in finding that the death of plaintiff's intestate was caused by the negligence of defendants, and therefore sustained their motion for judgment as in case of nonsuit, and dismissed the action. Plaintiff contends that in this there was error.

"Two questions are presented by this contention: First. Do the facts which the jury would have been justified in finding from the evidence constitute negligence on the part of defendants? Second. If so, was such negligence the proximate cause of the death of plaintiff's intestate?"

In Thornton v. Ionia Fair Assn., 200 N. W., 958, a directed verdict was sustained where a fourteen-year-old boy of ordinary intelligence and experience with fireworks, climbed a fence and went into an enclosure in fair grounds set aside for fireworks and after leaving the grounds, on his way home was injured by trying to set off explosives picked up in the fair grounds. It was said that the general rule imputes lack of capacity to recognize and understand danger up to the age of seven years, and it was held that the plaintiff could not recover by reason of age and experience. In the course of the opinion this case quotes from 20 R. C. L., 87, as follows:

"Some perils, such for example as fire, or open water, must be obvious even to the most immature intellect. On the other hand, seldom will a recovery be allowed for injuries to boys of fourteen, thirteen or even twelve years of age, unless they are shown to have been of inferior intelligence. The truth of the matter seems to be that the turntable doctrine furnished

justification for a recovery by children who have gotten old enough to go about unattended, but are yet unaware of the perils embodied by machinery and other instrumentalities of an artificial nature—the period between the ages of five and ten."

Carpenter v. Miller (Pa.), 36 L. R. A. (N. S.), 932 is very much like the present case as shown by the opinion which is as follows:

"The material facts in this controversy are not in dispute. The appellee was a wholesale dealer in confections and, in connection with that business, dealt in fireworks. The refuse which accumulated at his place of business was put into barrels and taken to and deposited on a dumping ground leased by a man named Ludlow, who charged for the privilege of depositing it upon his lot. Children in the neighborhood of the lot used it as a playground, against the protest of the lessee, who testified that, notwithstanding all he had done to keep them off, they were continually upon it. On July 24, 1902, an employee of the appellee took a wagon load of refuse from his store to this dumping ground, and deposited it there, after paying the usual price for doing so. Charles F. Carpenter, the injured appellant—then twelve years of age—and two companions picked out of this deposit candy and fireworks. Young Carpenter took from it a piece of fireworks known as a 'flowerpot.' He carried this to his home some distance away, and later in the day, after he had eaten his supper and it had become dark, accompanied by a younger brother, took it to a stone wall and lighted it. An explosion followed, which resulted in the injuries for which compensation is sought in this action. A verdict was directed for the defendant, and from the judgment upon it there followed this appeal.

"The dumping by the appellee of refuse containing fireworks on a lot where boys gathered to play is the negligence of which the appellant complains. - Whether his doing so was negligence is a question upon which we need not pass, as it clearly appeared that the direct, proximate cause of the injuries sustained was something else. Under the uncontradicted testimony, the refuse, as soon as deposited upon the ground, became the property of Ludlow. In addition to receiving a stipulated sum for the privilege of depositing it, whatever was in it became his property as soon as it was deposited on the lot, Counsel for the appellee contends, and with reason, that, after the refuse was thus sold to Ludlow, he alone was responsible for what was done with it. But on this we need not dwell. In dumping the refuse on the lot, no injury was done to the boy. After it had been dumped on the lot, nothing in it injured

him there, and nothing in it would have injured him elsewhere, if he had left it alone. Instead of doing so, he and his companions dug out of it candy and fireworks; but in digging these out no injury was done to any one of them. Nothing done or left undone by the appellee caused injury to the boy on the lot where the alleged negligent act was committed. After taking out the flowerpot he carried it to his home, without informing his parents that he had it, and, without their knowledge, later in the day took it to a stone wall for the purpose of lighting or setting it off. This he did, and the very serious consequences complained of followed from his act.

"There was nothing unlawful or unusual in appellee's dumping refuse upon the public dumping ground. He did what is and has been constantly done in all thickly settled communities. In all rubbish heaps on dumping grounds there are to be found rusty iron, broken knives, bottles, and glass, and innumerable other useless articles, always likely to cause injury to boys who may dig them out and handle them; but it has never yet been held that one who thus does what is usual and customary is guilty of any negligence. Though there were unexploded fireworks in the refuse deposited by the appellee, they could have caused no injury unless fire was applied to them, while all the other articles enumerated might have caused injury without any intervening agency. The appellant and his companion might have handled the flowerpot on the premises without the slightest danger of any injury to them, unless they lighted it. The injury to young Carpenter was not the immediate consequence of the deposit of the refuse on the dumping ground, but resulted from his independent, intervening act in taking the flowerpot to his home, to which place he had safely carried it, and setting fire to it some time afterwards. His injury could not reasonably have been contemplated as the result of the appellee's act in placing the rubbish on the lot. The boy's own act was the direct, proximate cause of his injuries. Marsh v. Giles, 211 Pa., 17, 60 Atl., 315.

"The assignments of error are overruled, and the judgment is affirmed."

"Where the injured person is confessedly of average capacity, the question of what amount of discretion he ought to have exercised under the circumstances of the particular case, ought not to be left to the jury. In the case of a boy between fourteen and fifteen years of age, Paxson, J., in Nagle v. Allegheny, etc., R. Co. (88 Penn. St. 35), said: 'At what age must an infant's responsibility for negligence be presumed to commence? This question cannot be answered by referring

it to a jury. That would furnish us with no rule whatever. It would give us a mere shifting standard affected by the sympathies or prejudices of the jury in each particular case. One jury would fix the period of responsibility at fourteen, another at twenty or twenty-one. This is not a question of fact for the jury, but of law for the court.' " 1 Sherman and Redfield on Negligence, sec. 73, pages 107-108.

In order to make out a case of attractive nuisance, it must be shown that the injured child was too young to understand and avoid the danger and that the nuisance was the direct and proximate cause of the injury.

"In an action for injury to a boy who was burned by the ignition of pieces of motion-picture films found by him and other boys on a vacant lot adjacent to the defendant's plant, it was held in Beickert v. G. M. Laboratories (1926) 242 N. Y., 168, 151 N. E., 195, that there could be no recovery, and that a judgment dismissing the complaint at the close of the plaintiff's case should be affirmed, where it appeared from the uncontradicted evidence that the defendant did not store films in this lot, but that its purpose, in dumping scraps of film there, was to burn them, so as to reclaim silver used in making them; that, in the process of burning, small pieces of the film would sometimes be carried into the air and then settle down on the vacant lot, and that it was such pieces that were picked up and ignited, to the plaintiff's injury. The court said that the rule seemed to be thoroughly settled, at least in that State, that a plaintiff cannot recover in cases of this kind unless the article which causes the injury is inherently dangerous; that the pieces of film were not inherently dangerous, but became so only when ignited. And the court held, also, that it was not shown that the defendant should have reasonably expected that such an injury would occur; in other words, it was not bound to anticipate that boys would wrongfully enter on the premises, secure these small pieces of film, carry them away, and either, by accident or design, ignite them. It seems that in this case the distinction made in Eastern Carbon Black Co. v. Stephens (Ky.), under II., supra, would be applicable, viz., between high explosive like dynamite, which may be exploded by a jar or concussion, and other less dangerous substances which may be handled safely provided they do not come in contact with fire." 49 A. L. R., 168.

In Wilmes v. Chicago G. W. R. Co., 175 Iowa, 101, 156 N. W., 877, it is said:

"These cases of attractive nuisance deal only with children who are not sufficiently mature and discreet to have legal ca-

pacity to assume a risk. If one is of mature age, or of sufficient age to know and appreciate the danger that attended his act even though attracted by the instrumentality, he cannot complain if he is injured. He cannot go into a place the danger of which he appreciated and understands, even though attracted to it, and recover 'if he is injured.''

The authorities relied on for plaintiff are distinguishable from the present case. Most of them are cases involving dynamite caps with which the plaintiffs were not supposed to be familiar. These cases are different from the instant case in that the plaintiffs were younger and because the caps are dangerous from concussion without ignition. Besides the danger of them is not understood as is that of ordinary firecrackers.

Wells v. Gallagher, 144 Ala., 363, is a case in which a boy found a bomb which had been swept into the street. The case does not show the nature of the bomb or manner of explosion and nothing is shown as to the intelligence of the plaintiff or whether he was cognizant of the danger. The facts may have brought the case within the same class as the dynamite cap cases.

Krachanake v. Acme Mfg. Co., 175 N. C., 95 S. E., 851, was a case of a child of seven getting dynamite caps. Besides the case was decided in 1918 and we have the case of Stephens v. Blackwood Lumber Co., 131 S. E., 315, by the same North Carolina court decided January 27, 1926, sustaining a directed verdict for defendant where a boy about fourteen, but of size and mental development of a boy eight or ten, took blasting powder from an open room. In this case the Krachanake case is commented on and distinguished. The distinction is found in the difference between dynamite caps and powder, and the fact that in one case the boy knew the powder would explode when brought in contact with fire and in the other case the boy did not know the nature of the dynamite caps. The recent case is much more like the present case than the earlier case, and the two cases by the same court serve to mark' the distinction between the present case and the line of dynamite cap cases.

It is not necessary to analyze all the cases cited by counsel for plaintiff. Not one of them was a case in which an injury resulted from handling fireworks or from the application of fire to powder. All the cases to which we are referred involving such a state of facts support the contention of defendant in this case. The Tennessee cases cited for plaintiff are too different in facts and principle to be of any assistance in the present case. In Briscoe v. Henderson Lighting & Power Co., 148 N. C., 396, the court said that in the numerous cases which they had examined they had not found any in which a boy thirteen years of age, with the usual intelli-

gence of boys of that age, had been permitted to rely on the attractive allurements of machinery to children.

Upon principle and authority we think a verdict for plaintiff could not be supported by the facts of this case. The age and intelligence of the plaintiff and his acquaintance with firecrackers and gunpowder with the circumstances under which the accident happened, preclude the application of the attractive nuisance idea. The accident was such as the defendant had no reason to apprehend and was due to the negligence of the plaintiff. A verdict for plaintiff would be without evidence to support it, therefore, we think it was not error to direct a verdict for the defendant. All assignments of error are overruled and the judgment of the lower court is affirmed. Plaintiff will pay the costs of the appeal.